[No. 13208.  Department Two. — June 29, 1891.]

# GOLDEN STATE AND MINERS' IRON WORKS, RESPONDENT, *v.* HORACE B. ANGELL ET AL., DEFENDANTS.  A. F. COLLINS AND ELIZABETH A. RISDON, APPELLANTS.

PATENT RIGHT — IMPROVEMENT BY SUPERINTENDENT — TITLE OF CORPORATION — EXECUTION — SUPPLEMENTARY PROCEEDINGS — ENFORCEMENT OF TRUST AGAINST RECEIVER. — Where one who was superintendent, director, and stockholder of a manufacturing corporation agreed, on behalf of the corporation, with an owner of swamp-land to make the latter a dredging-machine, with certain improvements which the superintendent had in mind, and which he thought would be valuable, and that if the purchaser would pay for building the machine, and try it, and if it proved a success that the corporation and purchaser would each have one half-interest in any patent that could be obtained for the improvements, and the corporation and purchaser, in pursuance of the agreement, paid in equal shares the entire expense of procuring patents, which were taken in the name of the superintendent, who claimed no interest therein on his own account, there is sufficient proof of a contract between the superintendent and the corporation by which the latter was to own one half of the patents obtained, and it can enforce an assignment of one half interest therein against a receiver appointed at the instance of execution creditors of the superintendent, to whom he was compelled to assign that interest upon proceedings supplementary to execution.

ID. — CONTRACT TO SECURE PATENTS — CONSIDERATION — SHARING EXPENSES. — The paying by the corporation of half the expense of procuring the patents is a "prejudice suffered," within the meaning of section 1605 of the Civil Code, and is a sufficient consideration for the contract, by which the inventor agreed to give a one-half interest in the patents to be procured to the corporation for paying part of the expenses of procuring them.

ID. — RIGHTS OF CORPORATION — OBJECTION OF CREDITORS OF SUPERINTENDENT — CONSIDERATION — RESOLUTION OF DIRECTORS — CERTAINTY AND FAIRNESS OF CONTRACT. — In an action by the corporation against a receiver of the inventor, who was appointed by the court, in proceedings supplementary to execution, at the instance of judgment creditors of the inventor, and to whom was assigned the patents to be sold in satisfaction of the judgment, to have it decreed that the corporation owned an undivided half of the letters patent, that the judgment creditors of the inventor be enjoined from proceeding further against the same, and that the receiver be ordered to assign a one-half interest in the letters patent to the corporation, the judgment creditors, who were also parties defendant, cannot object that there was no consideration for the contract between the corporation and the inventor, by which the former was to

own one half of the patents, nor can they object that no formal action was taken on the matter by the board of directors of the corporation, nor that the contract was about property that was uncertain and not *in esse*, and that it was unfair and unjust.

ID. — INCHOATE RIGHT OF INVENTOR — RIGHT OF CREDITORS — ASSIGNMENT. — The inchoate right of an inventor to apply for patents for improvements to a machine cannot be reached by a creditor, nor can he be compelled to apply for a patent; and he may assign such inchoate right as against his creditors.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*S. W. & E. B. Holladay,* for Appellant Collins.

There was no mutuality to the contract. There was nothing binding Williams to employ or binding this plaintiff to build, and the fact that the plaintiff did build afterwards makes no d.fference, as he was not damaged, but was paid the full value of the work; while Angell was not benefited by the act, as he received nothing beyond his regular salary. (Fry on Specific Performance, sec. 286; *Utica etc. R. R. Co.* v. *Brinkerhoff,* 21 Wend. *141; 34 Am. Dec. 220; *Cooke* v. *Oxley,* 3 Term Rep. 653; *Burnet* v. *Bisco,* 4 Johns. 235; *Marble Co.* v. *Ripley,* 10 Wall. 359; *Vassault* v. *Edwards,* 43 Cal. 466; *Davis* v. *Shields,* 26 Wend. 362.) There is a broad distinction between the motive for entering into a contract and the consideration of the contract. (*Philpot* v. *Gruninger,* 14 Wall. 577.) A contract which relates to no particular property or thing cannot be specifically enforced in equity. (*Boston etc. R. R. Co.* v. *Babcock,* 3 Cush. 232.) Neither party — not even Angell — knew at the time which were the inventions or improvements referred to. As property, it was not *in esse* or expectant. It did not then have even a potential existence, and could not be made the subject of such a contract as would afterward control its ownership. (Civ. Code, sec. 3390, subd. 6;

*Agard* v. *Valencia,* 39 Cal. 301; *Co-operative Ass'n* v. *Phillips,* 56 Cal. 546.) There was no consideration for the contract. Angell's salary, through the employment of the plaintiff to do the work, was no consideration, because he was entitled to that. (*Fay* v. *Jones,* 18 Barb. 341; Civ. Code, sec. 3391, subd. 1; *Stone* v. *Pratt,* 25 Ill. 20.) There was no fairness, no justice, and no equity in such a contract, where Angell should give away everything for absolutely nothing. (Civ. Code, sec. 3391, subd. 2; *Dunlap* v. *Kelsey,* 5 Cal. 181; *Sturgis* v. *Galindo,* 59 Cal. 31; 43 Am. Rep. 239; *Cooper* v. *Pena,* 21 Cal. 410; *Margraf* v. *Muir,* 57 N. Y. 158.) The arrangement as made was a fraud upon Angell's creditors, including this appellant, who was then a judgment creditor; for Angell was then heavily and hopelessly in debt. The rights of creditors are always superior to those of the donee of property of the debtor. (*Reade* v. *Livingston,* 3 Johns. Ch. 481, *497; 8 Am. Dec. 520; *Van Wyck* v. *Seward,* 18 Wend. 388, 394; *Bailey* v. *Burton,* 8 Wend. 339.) The true inquiry is, Had he, at the time, sufficient means to pay his debts? The evidence shows that he had not. (*Cole* v. *Tyler,* 65 N. Y. 78; *Fox* v. *Moyer,* 54 N. Y. 131; *Robinson* v. *Stewart,* 10 N. Y. *195.) If there was such a contract, it was voluntary and executory. Such a contract is void as to creditors in relation to pre-existing debts, and equity will not enforce it. (*Hanson* v. *Buckner,* 4 Dana, *254; 29 Am. Dec. 401; *Young* v. *White,* 25 Miss. 146; *Van Wyck* v. *Seward,* 18 Wend. 382.) Appellant Collins being a judgment creditor, and having brought this property into the hands of a receiver through the regular order of a competent court, his position is entitled to consideration. All that he has done he has done under a claim of right founded upon an order of a lawful tribunal having full power and jurisdiction to make it. (*United States* v. *Collins,* 4 Blatchf. 142; *Leach* v. *Day,* 27 Cal. 647; *Dunphy* v. *Belden,* 57 Cal. 429.) As such judgment creditor,

proceeding in aid of his execution, his rights to have
the property applied to his debt are superior to those of
any collateral party claiming it through a loose oral
agreement made in shadowy terms. (*Goodenow* v. *Dunn*,
21 Me. 92.) The remedy of specific performance should
rest in the sound discretion of the chancellor upon all
the equities of the particular case; where there are coun-
tervailing equities, courts of equity should refuse to in-
terfere, and leave the parties to their rights and remedies
at law. (*Weise's Appeal*, 72 Pa. St. 354; *Watkins* v. *Tur-
ner*, 34 Ark. 676; *Willard* v. *Taylor*, 8 Wall. 567.) This,
at best, was a secret agreement, and additional facili-
ties should not be afforded to the perpetration even of
what might be denominated constructive fraud. It is
well settled that equity never interferes against credi-
tors. (*Laws* v. *Thompson*, 4 Jones, 107.) Courts will
refuse to enforce contracts, even where, if performed,
they would refuse to rescind. (*Osgood* v. *Franklin*, 2
Johns. Ch. 22; 7 Am. Dec. 513; *Jackson* v. *Ashton*, 11
Pet. 247.)

*Gray & Haven*, for Respondent.

The inventions of Angell were *in esse*, and the un-
issued patents had a potential existence, and the agree-
ment of Angell, though made before the issue of the
patent, is valid and capable of being enforced in equity
by compelling an assignment, an account, and such other
relief as is just. (*Somerby* v. *Buntin*, 118 Mass. 287; 19
Am. Rep. 459; *Clum* v. *Brewer*, 2 Curt. 507; *Nesmith* v.
*Calvert*, 1 Wood. & M. 34; *Troy I. & N. Factory* v. *Corn-
ing*, 14 How. 209; *Hartshorn* v. *Day*, 19 How. 211; Civ.
Code, secs. 697, 699.) This was a good consideration
for Angell's contract to hold in trust the patents which
were afterwards issued to him by reason of the payments
made by the *cestui que trust*. (Civ. Code, secs. 1605,
1606; Smith on Contracts, side pages 91, 93, note citing
*Hind* v. *Holdship*, 2 Watts, 104; 26 Am. Dec. 107; Whar-

ton on Contracts, secs. 493, 505; *Clark* v. *Sigourney,* 17 Conn. 511.) Angell made this contract deliberately and without fraud, and the mere inadequacy of the amount of the consideration will not invalidate the contract. (Civ. Code, sec. 3442; *McFadden* v. *Mitchell,* 54 Cal. 629; *Hinds* v. *Holdship,* 2 Watts, 104; 26 Am. Dec. 107; Wharton on Contracts, sec. 516.)

*David Bixler,* also for Respondent.

This is an action in equity, and while it has been held that an assignment of things not in actual or potential existence is not good at law, the rule is the reverse in equity. (Benjamin on Sales, 60; Story's Eq. Jur., secs. 1040, 1040 a; *Mitchell* v. *Winslow,* 2 Story, 630; *Bibend* v. *Life Ins. Co.,* 30 Cal. 86; *Philadelphia etc. R. R. Co.* v. *Woelpper,* 64 Pa. St. 366, 371; 3 Am. Rep. 596; Civ. Code, sec. 1730.) If the contract be valid as between the parties, it is equally valid in its full extent, except in the sole case of fraud as to a creditor who stands in the shoes of the debtor. (*Holroyd* v. *Marshall,* 10 H. L. Cas. 191; *Mitchell* v. *Winslow,* 2 Story, 630; *Philadelphia etc. R. R. Co.* v. *Woelpper,* 64 Pa. St. 366; 3 Am. Rep. 596; Story's Eq. Jur., secs. 1040, 1040 a.) As to the improvements, they were in actual existence, and conferred the inchoate right to a patent, and this right is a species of property capable of assignment, even before an application for a patent is made. (Curtis on Patents, sec. 207; *Hendrie* v. *Sayles,* 98 U. S. 549, 551; *Newell* v. *West,* 13 Blatchf. 117; *Herbert* v. *Adams,* 4 Mason, 15; *Hartshorn* v. *Day,* 19 How. 211.) An inventor may assign, or agree to assign, not only the inventions he has made, but also those he may thereafter make, in a specific machine, and the assignee will thereby become the owner in equity of the patent issued for the subsequent inventions; and the inchoate right to an extension or renewal of an existing patent may be assigned so as to invest the assignee with the equitable title to the future

patent.   (Curtis on Patents, sec. 207; *Woodworth* v. *Sherman*, 3 Story, 171; *Rathbone* v. *Orr*, 5 McLean, 132, 133; *Hendrie* v. *Sayles*, 98 U. S. 551; *Clum* v. *Brewer*, 2 Curt. 506; *Newell* v. *West*, 13 Blatchf. 117; *Littlefield* v. *Perry*, 21 Wall. 226; *Aspinwall Mfg. Co.* v. *Gill*, 32 Fed. Rep. 700.)   The expenses incurred in procuring the patents were a sufficient consideration for the contracts.   (*Pitts* v. *Hall*, 3 Blatchf. 201; *Knowlton Platform Co.* v. *Cook*, 70 Me. 145; *Somerby* v. *Buntin*, 118 Mass. 280; 19 Am. Rep. 459; *Binney* v. *Annan*, 107 Mass. 94; 9 Am. Rep. 10; *Blakeney* v. *Goode*, 30 Ohio St. 350; *Burr* v. *De la Vergne*, 102 N. Y. 422; *Rathbone* v. *Orr*, 5 McLean, 132.)   Angell makes no complaint, and it is no concern of his creditor that there is any want of fairness, justice, or equity in the contracts, if such were the fact, since the only ground upon which the creditor can attack the contract of his debtor is, that it was made to hinder, delay, or defraud such creditor.   The person charged upon the contract may object to its enforcement, but no creditor or other stranger has any such right.   (Brown on Statute of Frauds, sec. 134; Story's Eq. Jur., sec. 755; *Chicago Dock Co.* v. *Kinzie*, 49 Ill. 289; *Ames* v. *Jackson*, 115 Mass. 512; *Cahill* v. *Bigelow*, 18 Pick. 372; *Eiseley* v. *Malchow*, 9 Neb. 176; *McCormick* v. *Drumnett*, 9 Neb. 384; *Rickards* v. *Cunningham*, 10 Neb. 417; *Clay* v. *Marshall*, 5 B. Mon. 269, 270; *Bohannan* v. *Pace*, 6 Dana, 194; *Cresswell* v. *McCaig*, 11 Neb. 227; *Burt* v. *Wilson*, 28 Cal. 638; 87 Am. Dec. 142; *Aicardi* v. *Craig*, 42 Ala. 311, 314; *Crawford* v. *Woods*, 6 Bush, 200; *Lewis* v. *Bannister*, 16 Gray, 500; Chitty on Contracts, 6th Am. ed., 174.)   The burden of establishing fraud upon Angell's creditors in the making of the contracts is upon the creditor, who must not only allege the fraud, but must prove it.   The averment that the transfer was made with the intent to hinder, delay, or defraud the creditor is material, and must be direct. The general allegation that the contracts were in fraud of the creditor is not enough.   To an assignment made

without such intent the statute has no application whatever. (See *Morgan* v. *Bogue*, 7 Neb. 434; *Hogan* v. *Burnett*, 37 Miss. 617.) An intent to hinder, delay, or defraud a creditor cannot be inferred as a legal conclusion from a want or inadequacy of consideration alone, or from the fact of insolvency alone, or from both inadequacy and insolvency combined. There must be an actual intention, a real design, on the part of the debtor to prevent the application of his property in whole or in part to the satisfaction of his debts. (*Thornton* v. *Hook*, 36 Cal. 229; *Jamison* v. *King*, 50 Cal. 132; *Nathan* v. *King*, 51 Cal. 521; *Ross* v. *Sedgwick*, 69 Cal. 250, 251.) Such agreements as are in question here are valid, and will be enforced by compelling an assignment or by granting such other relief as the circumstances require. In not a few of the cases cited below, the consideration for an interest in the future patent was the payment of a proportional part of the expense of procuring it. (*Somerby* v. *Buntin*, 118 Mass. 280; 19 Am. Rep. 459; *Binney* v. *Annan*, 107 Mass. 94; 9 Am. Rep. 10; *Pitts* v. *Hall*, 3 Blatchf. 201, 204; *Blackmer* v. *Stone*, 51 Ark. 489, 491; *Dueber Watchcase Co.* v. *Dalzell*, 38 Fed. Rep. 59; *Burr* v. *De la Vergne*, 102 N. Y. 417; *Newell* v. *West*, 13 Blatchf. 116; *Hapgood* v. *Rosenstock*, 23 Blatchf. 95; *Searle* v. *Hill*, 73 Iowa 367; *Littlefield* v. *Perry*, 21 Wall. 226; *Herbert* v. *Adams*, 4 Mason, 15; *Nesmith* v. *Calvert*, 1 Wood. & M. 34; *Clum* v. *Brewer*, 2 Curt. 506; *Blakeney* v. *Goode*, 30 Ohio St. 350; *Adams* v. *Messenger*, 147 Mass. 185; 9 Am. St. Rep. 679.) The contracts here were not in fraud of creditors, as Angell had no such property in the improvements as could be reached by a creditor, either in law or in equity. (See *Gillett* v. *Bate*, 86 N. Y. 93, 94.) Unless the thing transferred could be subjected to the rights of a creditor either at law or in equity, no fraud could have been committed upon him by the transfer, inasmuch as it withdraws from him no fund to which he was entitled, or in any manner varies his

rights or remedies.     (See Story's Eq. Jur., sec. 367; Civ. Code, sec. 3441.)

McFARLAND, J. — In July, 1880, the defendant A. F. Collins obtained a money judgment against the defendant Horace B. Angell and one Cyrus Palmer, and in September of that year an execution which had issued on the judgment was returned wholly unsatisfied. In May, 1884, the said Collins and the defendant Elizabeth A. Risdon, to whom an interest in the judgment had been assigned, instituted proceedings supplementary to execution against said Angell, which resulted in an order of the superior court, made May 23, 1884, commanding him to assign to one Forbes, a receiver appointed for that purpose, all the right, title, and interest which he, the said Angell, had in four letters patent for improvements in dredging-machines, to be sold in satisfaction of said judgment. A further order was made, permitting all persons or corporations claiming an interest in said letters patent to commence and prosecute any action against said receiver, to determine and enforce such interest. Whereupon the plaintiff herein, a corporation, commenced this present action, averring in its complaint that it is the real owner of one undivided half of said letters patent, and praying that it be decreed to be such owner; that said defendants Collins and Risdon be enjoined from proceeding further against the same; that said receiver be ordered to make an assignment of the same to plaintiff; and for other relief, etc. The court rendered judgment for plaintiff, substantially as prayed for; and from the judgment, and an order denying a new trial, the defendants Collins and Risdon appeal.

The main history of the case, as shown by the findings and evidence, is briefly this: In May, 1880, the plaintiff was, and for many years before then had been, engaged in manufacturing various kinds of machines, and the defendant Angell was then its superintendent,

and was also a director and owner of stock in the corporation. Williams & Bixler were then owners of large bodies of swamp-land which they were endeavoring to reclaim, and protect by levees; and a large break having occurred about that time on the line of their works, one of their employees was told by said Angell that he thought his company (plaintiff here) could construct a dredging-machine, with certain improvements, by which levees could be constructed more cheaply than by any other method. Afterwards, interviews were had upon the subject between Angell and General Williams, of the firm of Williams & Bixler. At Williams's request, Angell sketched out on paper his proposed improvements, and set the draughtsman of the plaintiff to work on a drawing. When the drawing was finished, Williams was somewhat pleased with it; but when an estimate of the cost was made, he thought it would cost too much for an experiment. Williams & Bixler were to advance the money to pay for the construction of the machine. Angell then stated to him that he thought " there were some valuable patentable improvements there that might be worth something, and in case there should be, that in consideration he would put the money in to build the machine and try it, that he would be entitled to one half and the Golden State and Miners' Iron Works the other half of such improvements, whatever there was that could be secured by patent." On his return to the iron-works of plaintiff he told Palmer, the president of the company, the statement he had made to Williams, and Palmer said it was " perfectly satisfactory." This report was made by Angell, as superintendent, to Palmer, as president of plaintiff. After considering the matter a day or two, Williams & Bixler gave Angell an order employing plaintiff to go on and complete the machine according to the drawings. The machine was built by plaintiff, for which Williams &

Bixler paid plaintiff seventeen thousand dollars. It was put into operation by Williams & Bixler, at their expense, and proved a success, and was called the "Hercules dredger." Afterwards, "General Williams and Mr. Palmer, the president of the plaintiff, decided it was time to secure, by patent, these improvements"; and Angell gave to W. Knox, the secretary of plaintiff, a rough idea of what he (Angell) thought was patentable, and requested Knox to examine the patent-office reports and learn if they had been covered by previous patents, it not being certain at the time which, or how many, of the improvements were new. After thorough investigation it was learned that some of the improvements were new; and rough specifications were given of them to Dewey & Co., patent solicitors, who prepared the papers necessary for applications for patents. Angell signed the applications as required by law; but the entire expense of procuring the patents was paid, one half by plaintiff, and one half by Williams & Bixler; and with the full knowledge and consent of Angell, they were to have the patents. Angell did not pay anything whatever towards procuring them, and the money was not paid *for* Angell, but by and *for* plaintiff and Williams & Bixler. Angell claimed no interest in the patents whatever, and when they were received he turned them over to Palmer, president of the plaintiff. In this way three patents were procured, viz., No. 246,362, issued August 30, 1881; No. 268,977, issued December 12, 1882, and No. 278,482, May 29, 1883. Afterwards, under similar arrangements, plaintiff was employed to make certain alterations and improvements on another dredger, called the "Atlas"; and another patent, No. 293,932, issued February 19, 1884, was procured. All these patents were issued to Angell, except No. 268,977, which was issued, one half to Angell and one half to Williams & Bixler. Angell, in his testimony, says: "I have never

in any way claimed or asserted any interest in these patents or the improvements described therein. . . . . I took the situation in this way: Here was a certain job of work to be done, for which the foundry and machine-works, when represented, would probably be able to procure the job and make some money; and I was there in their employ, and I considered it a duty to do all I could towards fulfilling the wants of these parties, customers of that concern, and I started in to get up something to accomplish that particular object." The court finds that no assignment of the patents was made by Angell to plaintiff, but that he held the same in trust for plaintiff.

On November 13, 1884, said Angell made application to the superior court to be discharged from his debts as an insolvent debtor, and on March 13, 1885, a decree so discharging him was entered. He was actually insolvent at the time the foregoing transactions took place; but he testifies that he did not then know of his insolvency, and considered his financial condition good.

We have alluded to some extent to the evidence in the case, because the main point made by appellants, and reiterated at nearly every stage of their argument, is, that there is no proof of any *contract* between Angell and plaintiff by which the latter was to own one half of the patents. But we think that there was ample proof of such contract. Angell expressly stated to the president of plaintiff that the latter was to have one half of the patents; and his conduct afterwards was a continuous and complete ratification of that statement. He allowed plaintiff to expend its own money for its own benefit in obtaining the patents, and expressly disclaimed any interest therein for himself. Certainly there was no want of assent on his part. It is contended that there was no consideration for the contract; but Angell was interested, not only as superintendent, but

also as a stockholder in plaintiff, to procure the contract with Williams & Bixler; and the "prejudice suffered" by plaintiff in paying for the patents was a sufficient consideration. (Civ. Code, sec. 1605.) Moreover, it is difficult to see how appellants are interested in that question. And the same may be said of the point that there was no formal action taken on the matter by the board of directors of plaintiff; neither the corporation nor any of its stockholders are making any objection. Something is said in the briefs about defrauding creditors; but in the first place, there is no evidence of any intent to do so, and in the second place, there is no averment in the answer that the transfer of the improvements and the right to patents therefor to plaintiff and Williams & Bixler were made with intent to defraud creditors. As to the other points made, as that the contract was about property that was uncertain, and not *in esse*, that it was unfair and unjust, etc., while we think that they are not well taken on their merits, it is sufficient to say that they refer to matters in which third parties, whether creditors or not, are not concerned. If plaintiff, through carelessness, had not neglected to have Angell make a formal assignment of the patents as they were received, which Angell was always willing to do, all trouble in the premises would have been avoided. The inchoate right which Angell had to apply for patents for certain improvements to dredging-machines which he thought he had discovered, "schemes which he had in his head," was nothing that could have been reached by a creditor. (Curtis on Patents, secs. 174, 175.) It was merely a privilege, dependent for its exercise upon his own volition. We do not know of any process by which he could have been compelled by a creditor to procure a patent. This right he transferred to plaintiff and Williams & Bixler under the circumstances above stated; he chose to per-

form his contract, and to allow them to procure the patents in his name by the expenditure of their own money; and we think that the court below was right in holding that one half of the patents thus procured was, in justice and equity, the property of plaintiff.

The judgment and order denying a new trial are affirmed.

Sharpstein, J., and De Haven, J., concurred.

Hearing in Bank denied.